**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES B. CROCKETT,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | CASE NO. CV 12-08293 RZ<br><br>MEMORANDUM OPINION<br>AND ORDER |

A workplace accident left Plaintiff Charles Crockett with a bad back, consistently described by treating physicians as severe enough to require surgery. The Administrative Law Judge concluded, however, that Plaintiff was not under a disability, and that Plaintiff could perform some of his past relevant work, as well as other jobs that existed in plentiful numbers in the economy. In reaching this conclusion, however, the Administrative Law Judge committed several errors.

First, he erred in rejecting the opinions of Plaintiff's treating physician William H. Mouradian. Dr. Mouradian examined and treated Plaintiff from August 2010 to December 2010 (as well as subsequent to the decision in this case). He stated that Plaintiff had a ruptured disk, producing chronic pain at L4-L5, and that Plaintiff should not lift any weight, that he could not stand or sit more than about 30 minutes, and that he should not bend, climb, crouch, kneel, crawl or reach; that he could only occasionally

balance, handle and finger. [AR 315-319] The Administrative Law Judge had this to say as to Dr. Mouradian:

> In determining the claimant's residual functional capacity, the undersigned has given significant weight to the opinion of the State Agency physician, because his findings are both consistent with and supported by the substantial medical evidence of record. [citations omitted]. Dr. Mouradian's opinion (Exhibit 15F) is given less weight because it is not consistent with the claimant's residual functional capacity, and is neither consistent with nor supported by the substantial medical evidence of record. In addition, there are very little treatment notes from Dr. Mouradian, and his opinion is not fully substantiated by his findings, and is rather conclusory. The opinion of Dr. Audell that the claimant was temporarily totally disabled is reserved to the undersigned. (SSR 96-5p). While the claimant had numerous treating physicians since his injury, the undersigned notes that few of them provided opinions regarding the claimant's residual functional capacity. Yet one would expect that had the claimant truly been limited to the extent alleged, his treating physicians would have made a note of such limitations in the medical records.

[AR 18] The opinion of a treating physician is given greater weight than the opinion of other physicians. *Aukland v. Massanari*, 257 F.3d 1033, 1036 (9th Cir. 2001). In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Court of Appeals described the interaction between an opinion from a consultant and an opinion from a treating physician:

> When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her own conclusions, the conclusions of the examining physician are not "substantial evidence."

495 F.3d at 632. The Court went on to contrast that situation with the situation where the examining physician made his own independent findings, in which case the findings can stand as substantial evidence. The Court then explained that "[i]ndependent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered . . . ." *Id.* (citations omitted).

Consistent with *Orn*, the Court of Appeals in *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996), ruled that the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of either an examining physician or a treating physician. Cases which *do* rely on the opinion of a non-examining consultant nevertheless also say that there must be other evidence in the record with which the advisor's opinion is consistent. *See, e.g.*, *Morgan v. Commissioner of Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

The state physician here did not examine Plaintiff, but only reviewed records. Even then, he did not review all the records, as he made his assessment in April 2010, prior to Dr. Mouradian's treatment. He did not make any diagnosis different from any treating physician, or make findings based on objective medical evidence that treating physicians did not consult. [AR 297-303] Under *Orn* and *Lester*, it was error to give the consultant's opinion greater weight than the treating physician's.

Nor, in any event, can the reasons given by the Administrative Law Judge justify the rejection of Dr. Mouradian's opinion. The first reason was that it was not consistent with Plaintiff's residual functional capacity. But of course one cannot reject an opinion as to a person's capacity on the grounds that it is not consistent with his capacity.

Nor is it accurate to say that it is not supported by the record or that his opinion is "somewhat conclusory." The record contains MRI's, x-rays, reports of physical examinations and all the other types of expected medical documentation. An opinion based on those matters cannot be said to be conclusory. Finally, the absence of notations in the record as to Plaintiff's capacity to do work is not surprising. Doctors do not normally evaluate a capacity to do work, unless they are asked; they focus on symptoms, diagnoses, medications and the like.

The second error the Administrative Law Judge committed was in his assessment of Plaintiff's credibility. The Administrative Law Judge repeated the boilerplate language, found in all administrative decisions of the last several years that have come before this Court, that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." This is fairly meaningless verbiage.

The Administrative Law Judge did say, however, that Plaintiff's statements about the limitations on his ability to walk, sit and lift were not supported by objective evidence, that it was not believable that he had to lie down daily since 2007, and that he has no problem with ambulation. [AR 17] He elaborated on this statement by saying that Plaintiff has normal lumbar spine range of motion, 5/5 strength in all major muscle groups on the lower extremities, and his gait and posture are within normal limits. [AR 17] The exhibits he referenced, however, do not really support this viewpoint. Exhibit 6F/4 does say that Plaintiff had normal range of motion, but it adds "with pain at the extremities on motion." It also says that Plaintiff has 5/5 strength in all muscle groups of the lower extremities. But as to the back, it says that Plaintiff is to get a discogram, and that "if positive, we will recommend disc replacement surgery . . . ." [AR 243] The second exhibit, 10F/3, agrees with the 5/5 assessment as to the lower extremities muscle groups,

but shows the lumbar spine range of motion as limited, including "Flexion: 60 degrees with pain," and "Extension: 0 degrees with pain." [AR 256] The third exhibit, 15F/10 — from Dr. Mouradian, whose records elsewhere the Administrative Law Judge said were insufficient — says that Plaintiff's use of arms with arisal from a chair were within normal limits [AR 324], but on the next page states, under the category of "Range of Motion Pattern," that there is pain at flexion of 3/5, abnormal arisal and pain at 3/5, pain at arisal with stability at 3/5, pain with slow speed–stability at 3/5 and extension of 0 degrees. [AR 325]

    Similarly, the Administrative Law Judge's comments about Plaintiff's conservative treatment cannot be taken as impeaching Plaintiff's credibility. The Administrative Law Judge said that Plaintiff received conservative treatment only and that, despite recommendations, it was unclear whether Plaintiff intended to have surgery. [AR 17] But the doctors repeatedly described the conservative treatment as not working. ("As the patient has clearly failed conservative management, including therapy, medication and epidural injections . . ." [AR 260]; "Clearly he has failed conservative management . . ." [AR 256]; "Mr. Crockett in my opinion has failed conservative management." [AR 341]) And the record is clear that there were differing opinions as to what kind of surgery Plaintiff should have – disc replacement or fusion – and whether there was coverage for the surgery. Under the circumstances, the fact that Plaintiff tried conservative treatment and had not undergone surgery as of the time of the hearing cannot fairly be held against him.

    Because of these two errors, the residual functional capacity was not supported by substantial evidence, and the vocational expert's testimony, which depended on that capacity's being accurate, also could not support the availability of work for a person in Plaintiff's position. Under the circumstances, the Court need not address whether the Administrative Law Judge erred in concluding that Plaintiff did not also have a severe mental impairment.

In accordance with the foregoing, the decision of the Commissioner is reversed. The matter is remanded to the Commissioner for further proceedings consistent with this opinion, during which Dr. Mouradian's assessment is to be accepted. The Court has been advised that Plaintiff has had surgery since the hearing, and undoubtedly the parties will wish to bring that fact, and any similar relevant evidence to the attention of the Commissioner.

IT IS SO ORDERED.

DATED:   September 26, 2013

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE